IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MARILYN G. LAJOIE, MD., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF DEPARTMENT OF VETERANS AFFAIRS and DENIS R. MCDONOUGH, SECRETARY OF VETERANS AFFAIRS, <br><br> Defendants. | CV 22-82-H-BMM-KLD <br><br> FINDINGS & RECOMMENDATION |

This employment matter comes before the Court on Defendants United Stated Department of Veterans Affairs' ("VA") and Denis R. McDonough's, Secretary of Veterans Affairs (collectively "Defendants") Motion to Dismiss Counts 3-6 of the Second Amended Complaint for lack of subject matter jurisdiction and failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6). (Doc. 35). The motion should be granted for the reasons discussed below.

I.   **Background**[1]

---

[1] The following facts are taken from the Second Amended Complaint and are assumed to be true for limited purpose of resolving the pending motion to dismiss.

1

Plaintiff Marilyn Lajoie, M.D. ("Dr. Lajoie") commenced this action in October 2022, following the termination of her employment as a physician and Deputy Chief of Staff at the VA's Fort Harrison Medical Center in Helena, Montana ("Fort Harrison VA"). (Doc. 1). Dr. Lajoie first worked as a VA physician for a brief period in 2014. (Doc. 34 at ¶ 8). Beginning in March 2016, Dr. Lajoie worked as a VA physician in Black Hills, South Dakota, where she became Section Chief of Primary Care. (Doc. 34 at ¶ 9). In January 2017, Dr. Lajoie transferred to a VA facility in Cheyenne, Wyoming, where she became Associate Chief of Staff, Ambulatory Care. (Doc. 34 at ¶ 10). Dr. Lajoie transferred again in November 2017, this time to the Fort Harrison VA, where she served as Deputy Chief of Staff, Acting Chief of Staff, and was on the Executive Leadership Team. (Doc. 34 at ¶ 11).

In July 2019, Dr. James Maganito was hired as Chief of Staff at the Fort Harrison VA, and became Dr. Lajoie's supervisor. (Doc. 34 at ¶ 12). On or about November 27, 2019, Dr. Maganito repeatedly questioned Dr. Lajoie about her religion. (Doc. 34 at ¶ 13). On or about December 6, 2019, Dr. Maganito asked her how old she was and when she planned to retire. (Doc. 34 at ¶ 14). In the weeks that followed, Dr. Maganito emailed the Montana Board of Medical Examiners with false and misleading statements about Dr. Lajoie for the purposes of hindering or preventing her from obtaining a Montana medical license. (Doc. 34 at ¶¶ 15-16).

On December 20, 2019, Fort Harrison Medical Center Director Judy Hayman suspended Dr. Lajoie's primary care clinical privileges at the recommendation of Dr. Maganito. (Doc. 34 at ¶ 16). In January 2020, after Dr. Lajoie had reached out to Human Resources Specialist Reuban Ard for the purpose of filing an Equal Employment Opportunity complaint, Dr. Manganito told Dr. Lajoie that he would have her privileges revoked and have her suspended from the VA. (Doc. 34 at ¶¶ 17-18).

On April 22, 2021, the Fort Harrison VA terminated Dr. Lajoie's employment for the stated reason that she had not completed a residency program and therefore did not meet the requirements for VA physician employment. (Doc. 34 at ¶ 5-6). The termination letter informed Dr. Lajoie that she had a right to post-termination review by the Network Director. (Doc. 34 at ¶ 19). Dr. Lajoie requested review through a letter dated April 28, 2021, but never received a response. (Doc. 34 at ¶ 19). Dr. Lajoie also filed a complaint with the VA challenging her termination on the basis of alleged unlawful discrimination and retaliation. (Doc. 34 at ¶ 20). On July 28, 2022, the VA issued a Final Agency Decision finding that Dr. Lajoie was ineligible for continued employment as a VA physician for failure to complete a residency program. (Doc. 34 at ¶ 20).

Dr. Lajoie brought this lawsuit in October 2022, and filed a First Amended Complaint on January 10, 2023. (Docs. 1, 8). Dr. Lajoie's First Amended

Complaint alleged five claims for relief against both Defendants. Count 1 asserted employment discrimination based on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Count 2 alleged employment discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a). Count 3 sought a declaratory judgment that Dr. Lajoie was qualified to be a VA physician and should not have been terminated from employment, reinstatement, and damages pursuant to 28 U.S.C. §§ 2201, 2202. Count 4 alleged that Dr. Lajoie had been adversely affected by agency action, namely the misinterpretation of the statutory education requirements for a VA physician, and asserted a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Count 5 alleged that Defendants arbitrarily and capriciously terminated her employment in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (Doc. 8 at ¶¶ 28-44).

In April 2023, then-presiding United States District Court Judge Sam E. Haddon granted Defendants' motion to dismiss Counts 3-5 of the First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. (Doc. 26). The Court concluded that all of Dr. Lajoie's claims were "based upon employment actions taken by her superiors allegedly due to religious and age discrimination," and dismissed Counts 3-5 on the ground that Title VII and the

ADEA provide the exclusive remedies for claims alleging religious-based and age-based employment discrimination. (Doc. 26 at 6).

As permitted by the subsequent scheduling order (Doc. 33), Dr. Lajoie filed a Second Amended Complaint on August 2, 2023. (Doc. 34). The Second Amended Complaint asserts the same facts and the same five claims for relief that were alleged in the First Amended Complaint (Counts 1-5) and adds a claim for estoppel (Count 6). (Doc. 34). Defendants move to dismiss Counts 3-5 for the same reasons the Court dismissed them previously, and move to dismiss Count 6 based on the exclusivity of Title VII and the ADEA, claim preemption by Title 38 of the United States Code, and failure to adequately plead an estoppel claim against the government.

## II. Legal Standards

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the action. "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coalition v. United States Environmental Protection Agency*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007). The court will presume jurisdiction is lacking until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

A defendant may pursue a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

Resolution of a facial challenge to jurisdiction depends on the allegations in the complaint, and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial challenge, the court must assume the allegations in the complaint are true and "draw all reasonable inferences in [plaintiff's] favor." *Wolfe*, 392 F.3d at 362; *Whisnant v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005).

**B.     Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) when the complaint "either (1) lacks a cognizable legal

theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). A plaintiff must state a claim for relief that is "plausible on its face" to survive a motion to dismiss. *Zixiang Li*, 710 F.3d at 999 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citation omitted).

## III. Discussion

### A. Counts 3-5

Defendants argue that Dr. Lajoie's claims for declaratory judgment, relief under the APA, and Due Process violations as set forth in Counts 3-5 of the Second Amended Complaint should be dismissed for the same reasons the Court dismissed them previously. Counts 3-5 of the Second Amended Complaint are identical to Counts 3-5 of the First Amended Complaint, and with one immaterial exception[2] are based on the exact same factual allegations. (Compare Doc. 8 ¶¶ 5-

---

[2] Paragraph 27 of the First Amended Complaint alleged that "[w]hile employed at the VA, Dr. Maganito had a pattern and practice of retaliating against employees who made complaints, particularly discrimination complaints." (Doc. 8 at ¶ 27). Paragraph 27 of the Second Amended Complaint additionally alleges that "[w]hile employed with the VA, Director Hayman supported this pattern and practice of retaliation and atmosphere of initiation," and after Dr. Lajoie's "termination, Dr. Maganito and Director Hayman were removed from their positions at" the Fort

27 with Doc. 34 ¶¶ 5-27).

The Court's order dismissing those claims relied on *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976), which held that Title VII "provides the exclusive judicial remedy for claims of discrimination [based on race, color, sex, religion or national origin] in federal employment." As the Court recognized, however, the Ninth Circuit has held that *Brown* does not apply to claims that are distinct from a claim of employment discrimination, even if the claims all arise from the same set of facts. (Doc. 26 at 5, citing *Arnold v. United States*, 816 F.2d 1306, 1311-12 (9th Cir. 1987)). *See also Holly v. Jewell*, 196 F.Supp.3d 1079, 1084 (N.D. Cal. 2016) (explaining that under Ninth Circuit caselaw, *Brown* does not apply to constitutional or tort claims that "seek remedies for conduct other than discrimination in federal employment"). Like Title VII, which provides the exclusive remedy for claims of employment discrimination based on race, color religion, sex, or national origin, the ADEA provides the exclusive remedy for age discrimination claims in federal employment. (Doc. 26 at 5, citing *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1054 (9th Cir. 2009).

Applying these principles here, the Court concluded that Title VII and the

---

Harrison VA. (Doc. 34 at ¶ 27). The factual allegations in paragraphs 5 through 27 of the First and Second Amended Complaints are otherwise identical.

ADEA provided the exclusive remedy for Dr. Lajoie's claims for declaratory judgment, relief under the APA, and Due Process violations. (Doc. 26 at 6). The Court reasoned that Dr. Lajoie's declaratory judgment claim was unnecessary given Title VII's remedies, which include enjoining the defendant from engaging in unlawful employment practices, ordering affirmative action, or ordering any other equitable relief the court deems necessary and appropriate. (Doc. 26 at 6 citing 42 U.SC. § 2000e-5(g)(1)). The Court further found that "if APA and constitutional claims, like Counts 4 and 5, are supported by the same factual circumstances as the Title VII claim, these claims are preempted by Title VII because 'allowing additional individual remedies would interfere with that carefully devised scheme [of Title VII] by permitting circumvention of administrative remedies.'" (Doc. 26 at 6, citing *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916 (9th Cir. 1981) (holding constitutional claims are preempted by Title VII) and *Ward v. E.E.O.C.*, 719 F.2d 311, 313-14 (9th Cir. 1983) (holding APA claims are prompted by Title VII)). The Court ultimately concluded that because Dr. Lajoie's claims for declaratory judgment, relief under the APA, and Due process violations were all based on the same alleged discriminatory conduct, Title VII and the ADEA provided the exclusive remedies. (Doc. 26 at 6).

   Notwithstanding the Court's order, Dr. Lajoie advances the exact same claims in Counts 3-5 of her Second Amended Complaint. She again argues those

9

claims are independent of her employment discrimination claims under Title VII and the ADEA, and do not arise from the same set of facts. Specifically, Dr. Lajoie contends that Counts 3-5 arise from allegations that Defendants misinterpreted the law regarding physician qualifications, and takes the position that she can prevail on those claims without establishing unlawful "discrimination because her right to be employed is different than her right to be free from discrimination in employment." (Doc. 45 at 10).

Dr. Lajoie made the same arguments in response to the previous motion to dismiss. (Doc. 11 at 8). As it relates to Counts 3-5, Dr. Lajoie's brief in response to the pending motion to dismiss essentially reiterates the same arguments she made in opposition to the previous motion. *Compare* Doc. 11 at 6-10 with Doc. 45 at 8-12. As evidenced by its order granting the previous motion to dismiss, the Court rejected these arguments as to Counts 3-5 and there is no basis for revisiting that reasoning here. Consistent with the Court's prior order, and because Counts 3-5 of the Second Amended Complaint seek remedies for allegedly discriminatory conduct, those claims should be dismissed on the grounds that Title VII and the ADEA provide the exclusive remedies.

### B.    Count 6

The Second of Amended Complaint includes one new claim for relief—Count 6 for common law estoppel. (Doc. 34 at ¶¶ 45-53). Dr. Lajoie alleges the

VA made several affirmative representations to her that she was qualified to be a VA physician, including by affirming her appointment to practice at three separate facilities over five years. (Doc. 34 at ¶ 46). Dr. Lajoie claims she has suffered a serious injustice as a result of the VA's actions, and the public's interest will not suffer undue damage by the imposition of liability on the VA. (Doc. 34 at ¶ 47-48). Dr. Lajoie asserts the VA knew that she had not completed her residency when it qualified her to become a VA physician, and that she would rely on its acts of qualifying her to be VA physician. (Doc. 34 at ¶¶ 49-50). Dr. Lajoie further alleges she was ignorant of the fact that the VA's position was that failure to complete a residency would disqualify her from serving as a VA physician, and claims she relied to her detriment on the VA's representations that she was qualified to serve as a VA physician. (Doc. 34 at ¶¶ 51-52). Dr. Lajoie claims she has been damaged personally and professional as a result of the VA's conduct, and asserts the VA must be estopped from relying her failure to complete a residency program as a reason for her termination. (Doc. 34 at ¶¶ 52-53). These allegations roughly track the elements of a common law claim of estoppel against the government. *See Baccei v. U.S.*, 632 F.3d 1140, 1147 (9th Cir. 2011) (listing the elements of an estoppel claim against the government).

Defendants argue that like Counts 3-5, Count 6 is an attempt to circumvent the remedies provided by federal employment discrimination law, and should be

dismissed based on the exclusivity of Title VII and ADEA. Dr. Lajoie counters that her estoppel claim is not based on the same set of facts that support her employment discrimination claims. She contends the claim is premised on the allegation "that she relied on representations of the government's various credentialing boards to pursue and maintain VA employment, for which she was subsequently fired," and is thus completely independent of her discrimination claims. (Doc. 45 at 12).

Review of the Second Amended Complaint demonstrates that Defendants have the better argument. The Factual Allegations section of the pleading recounts Dr. Lajoie's employment history, details Dr. Maganito's alleged discriminatory and retaliatory conduct, explains that Dr. Lajoie unsuccessfully challenged her termination at the administrative level based on alleged unlawful discrimination, and describes why she believes she was qualified for her position. (Doc. 34 at ¶¶ 5-27). Dr. Lajoie's newly added estoppel claim relies on the same set of facts as her Title VII and ADEA claims and seeks the same remedies, including lost compensation and reinstatement. (Doc. 34 at 13). Moreover, as argued by Defendants, the specific relief sought in Count 6 that the VA "be estopped from relying on [Dr. Lajoie's] failure to complete her residency program as a reason for [her] termination," is functionally no different from the declaration sought in Count 3, that she "was qualified to be a VA physician and should not have been

12

separated from her employment," and the agency action at issue in Count 4, the VA's alleged misinterpretation of the statutory education requirements for a VA physician and her subsequent termination. Because the Court has previously determined that Counts 3 and 4 are properly dismissed based on the exclusivity of the remedies provided under Title VII and the ADEA, it follows that Count 6 should be dismissed on the same grounds.

The Court also notes that Dr. Lajoie's estoppel claim raises issues that are central to the burden shifting analysis associated with her employment discrimination claims. *See e.g. Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (describing the applicable *McDonnell Douglas* burden shifting framework). Specifically, the assertion in Count 6 that Defendants "must be estopped from relying on [Dr. Lajoie's] failure to complete a residency program as a reason for [her] termination" is related to whether the stated reasons for her termination were legitimate or pretextual. (Doc. 34 at ¶ 53). As argued by Defendants, assuming Dr. Lajoie establishes a prima facie case of discrimination, whether she was qualified to be a VA physician and whether she was terminated for legitimate reasons will be addressed while litigating her employment discrimination claims. Dr. Lajoie's estoppel claim is thus duplicative of her employment discrimination claims, and allowing the claim to proceed would interfere with the "exclusive, preemptive administrative and judicial scheme for the

redress of federal employment discrimination" established under Title VII and the ADEA. *White v. General Services Admin.*, 652 F.2d 913, 916 (9th Cir. 1981) (quoting *Brown*, 425 U.S. at 829). *See also Ahlmeyer,* 555 F.3d at 1054 (describing the ADEA as "the exclusive enforcement mechanism" for the redress of federal employment discrimination based on age).

The line of Ninth Circuit cases cited by Dr. Lajoie, which recognizes a limited exception to the exclusivity of Title VII, does not compel a different result. (Doc. 45 at 9). In *Otto v. Heckler*, 781 F.2d 754, 756-57 (9th Cir. 1986), *amended by* 802 F.2d 337 (9th Cir. 1986), for example, the Ninth Circuit held that "torts which constitute 'highly personal violation[s] beyond the meaning of 'discrimination' [are] separately actionable." *See also Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995) (holding that "[w]hen the harms suffered involve something more than discrimination," such as rape and sexual assault, "the victim can bring a separate claim" in addition to claims for VII sexual discrimination); *Arnold v. United States*, 816 F.2d 1306, 1311-12 (9th Cir. 1987) (holding that Title VII is not the exclusive remedy for federal employees who suffer highly personal wrongs beyond the meaning of discrimination, such as assault, false imprisonment, intentional infliction of emotional distress, and battery).

Dr. Lajoie does not allege any such highly personal conduct here. Like her claims for declaratory judgment, relief under the APA, and Due Process violations,

Dr. Lajoie's estoppel claim alleges conduct that falls within the rubric of Title VII and the ADEA. Accordingly, and consistent with the Court's previous order dismissing Counts 3-5, the Court concludes that Title VII and the ADEA provide the exclusive remedies for the conduct alleged in Count 6 for estoppel.

Even if Dr. Lajoie's estoppel claim was not barred by the exclusivity of Title VII and the ADEA, Defendants take the position that it is barred by Title 38 of the United States Code, 38 U.S.C. § 7461 et seq. Title 38 governs the employments terms of VA physicians and "provides a comprehensive remedial scheme to address agency adverse actions" for which Congress has clearly indicated that no judicial review is available. *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008). "[W]here a comprehensive remedial scheme exists to address agency adverse actions, and Congress has clearly indicated that no judicial review is available, an individual may not choose other federal statutory avenues to obtain review." *Weber*, 521 F.3d at 1067. A VA employee appointed under Title 38 "may not choose other federal statutory avenues to obtain review." *Weber*, 521 F.3d at 1067. *See also Hakki v. Sec. Dept. of Veterans Affairs*, 7 F.4th 1012, 1023-24 (11th Cir. 2021) (holding that "the district court did not have subject-matter jurisdiction over the [plaintiff's] APA claims because [Title 38] is a comprehensive statutory remedial scheme that precludes review of the VA's discharge decision"); *Kransky v. U.S. Dept. of Veterans Affairs*, 2023 WL

15

5915794, at *7 (D. Mont. Sept. 11, 2023) (citing *Weber* and *Hakki*, and recognizing that Title 38 "is a comprehensive remedial scheme that forecloses judicial review for VA employees challenging adverse actions by the VA when the statute does not expressly provide for one"). Title 38's remedial scheme applies to "major adverse actions" including "suspension, transfer, reduction in grade, reduction in basic pay, and discharge." 38 U.S.C. § 7461(c)(2). *See Kransky*, 2023 WL 5915794, at *1 (citing § 7461(c) and recognizing that "[a] major adverse action includes discharge").

As pled in Count 6, Dr. Lajoie's estoppel claim effectively challenges the stated reason for her discharge, that she was ineligible for continued employment as a VA physician. To the extent Count 6 can arguably be construed as a claim challenging Dr. Lajoie's termination for reasons other than the discriminatory conduct alleged in her claims under Title VII and the ADEA, there is no judicial review available. The appropriate forum for Dr. LaJoie to assert a claim challenging her discharge was in the agency administrative proceedings following her termination. *See* 38 U.S.C. §§ 7461-7464.

As alleged in the Second Amended Complaint, Dr. Lajoie participated in post-termination administrative proceedings. (Doc. 34 at ¶ 19). The remedial scheme provided by Title 38 forecloses judicial review of the VA's decision to terminate Dr. Lajoie's employment. *See Hakki*, 7 F.4th at 1023-24. Accordingly, to

16

the extent Dr. Lajoie's estoppel claim can be construed as a wrongful discharge claim challenging the VA's decision, Title 38 precludes her from bringing the claim in this action.

Having determined that Counts 3-6 should be dismissed based on the exclusivity of Title VII and the ADEA, and that Count 6 is also subject to dismissal based on the preclusive effect of Title 38, the Court does not reach alternative argument that Dr. Lajoie fails to adequately plead the elements of an estoppel claim against the government.

## IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Defendants' Rule 12(b) Motion to Dismiss Counts 3-6 of the Second Amended Complaint (Doc. 35) be GRANTED.[3]

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

---

[3] Whether dismissal based the exclusivity of Title VII and the ADEA is appropriate under Rule 12(b)(1) or 12(b)(6) is not entirely clear. *See e.g.*, *Holly v. Jewell*, 196 F.Supp.3d 1079 (N.D. Cal. 2016) (granting Rule 12(b)(1) motion to dismiss claims based on the exclusivity of Title VII); *Navarro v. Immigration and Customs Enforcement,* 2019 WL 209008, at *1 n. 3 (S.D. Cal. May 13, 2019) (granting motion to dismiss claims based on the exclusivity of Title VII pursuant to Rule 12(b)(6)). Because the applicable standards are the same, dismissal is proper regardless of whether Rule 12(b)(1) or (b)(6) applies.

the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 28th day of February, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge