**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| MARILYN G. LAJOIE, MD., | **CV-22-82-H-BMM-KLD** |
| Plaintiff, | |
| vs. | **ORDER ADOPTING IN PART MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION** |
| UNITED STATES OF DEPARTMENT OF VETERANS AFFAIRS and DENIS R. MCDONOUGH, SECRETARY OF VETERANS AFFAIRS, | |
| Defendants. | |

United States Magistrate Judge Kathleen DeSoto entered Findings and Recommendation in this matter on February 28, 2024. (Doc. 50.) Plaintiff Marilyn G. Lajoie, MD, ("Dr. Lajoie") objects to Magistrate Judge DeSoto's recommendation to dismiss Counts 3, 4, 5, and 6 of Dr. Lajoie's Second Amended Complaint. (Doc. 56.) Legal conclusions of a magistrate judge to which a party timely objects must be reviewed *de novo*. 28 U.S.C. § 636(b)(1)(C).

## BACKGROUND

Plaintiff Marilyn Lajoie, M.D. ("Dr. Lajoie") commenced this action in October 2022, following the termination of her employment as a physician and Deputy Chief of Staff at the VA's Fort Harrison Medical Center in Helena, Montana ("Fort Harrison VA"). (Doc. 1.) Dr. Lajoie first worked as a VA physician for a brief period in 2014. (Doc. 34 at ¶ 8.) Beginning in March 2016, Dr. Lajoie worked as a VA physician in Black Hills, South Dakota, where she became Section Chief of Primary Care. (Doc. 34 at ¶ 9.) In January 2017, Dr. Lajoie transferred to a VA facility in Cheyenne, Wyoming, where she became Associate Chief of Staff, Ambulatory Care. (Doc. 34 at ¶ 10.) Dr. Lajoie transferred again in November 2017, this time to the Fort Harrison VA, where she served as Deputy Chief of Staff, Acting Chief of Staff, and was on the Executive Leadership Team. (Doc. 34 at ¶ 11.)

In July 2019, Dr. James Maganito was hired as Chief of Staff at the Fort Harrison VA, and became Dr. Lajoie's supervisor. (Doc. 34 at ¶ 12.) On or about November 27, 2019, Dr. Maganito repeatedly questioned Dr. Lajoie about her religion. (Doc. 34 at ¶ 13.) On or about December 6, 2019, Dr. Maganito asked her how old she was and when she planned to retire. (Doc. 34 at ¶ 14.) Dr. Maganito in the weeks that followed emailed the Montana Board of Medical Examiners with

false and misleading statements about Dr. Lajoie for the purposes of hindering or preventing her from obtaining a Montana medical license. (Doc. 34 at ¶¶ 15-16.)

Fort Harrison Medical Center Director Judy Hayman suspended Dr. Lajoie's primary care clinical privileges on December 20, 2019, at the recommendation of Dr. Maganito. (Doc. 34 at ¶ 16.) In January 2020, after Dr. Lajoie had reached out to Human Resources Specialist Reuban Ard for the purpose of filing an Equal Employment Opportunity complaint, Dr. Maganito told Dr. Lajoie that he would have her privileges revoked and have her suspended from the VA. (Doc. 34 at ¶¶ 17-18.)

The Fort Harrison VA terminated Dr. Lajoie's employment on April 22, 2021, for the stated reason that she had not completed a residency program and therefore did not meet the requirements for VA physician employment. (Doc. 34 at ¶ 5-6.) The termination letter informed Dr. Lajoie that she had a right to post-termination review by the Network Director. (Doc. 34 at ¶ 19.) Dr. Lajoie requested review through a letter dated April 28, 2021, but never received a response. (Doc. 34 at ¶ 19.) Dr. Lajoie also filed a complaint with the VA challenging her termination on the basis of alleged unlawful discrimination and retaliation. (Doc. 34 at ¶ 20.) The VA issued a Final Agency Decision on July 28, 2022, finding that Dr. Lajoie was ineligible for continued employment as a VA physician for failure to complete a residency program. (Doc. 34 at ¶ 20.)

Dr. Lajoie brought this lawsuit in October 2022, and filed a First Amended Complaint on January 10, 2023. (Docs. 1, 8.) Dr. Lajoie's First Amended Complaint alleged five claims for relief against both Defendants. Count 1 asserted employment discrimination based on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Count 2 alleged employment discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a). Count 3 sought a declaratory judgment that Dr. Lajoie was qualified to be a VA physician and should not have been terminated from employment, reinstatement, and damages pursuant to 28 U.S.C. §§ 2201, 2202. Count 4 alleged that Dr. Lajoie had been adversely affected by agency action, namely the misinterpretation of the statutory education requirements for a VA physician, and asserted a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Count 5 alleged that Defendants arbitrarily and capriciously terminated her employment in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (Doc. 8 at ¶¶ 28-44.)

In April 2023, then-presiding United States District Court Judge Sam E. Haddon granted Defendants' motion to dismiss Counts 3-5 of the First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. (Doc. 26.) The Court concluded that all of Dr. Lajoie's claims were "based upon

employment actions taken by her superiors allegedly due to religious and age discrimination," and dismissed Counts 3-5 on the ground that Title VII and the ADEA provide the exclusive remedies for claims alleging religious-based and age-based employment discrimination. (Doc. 26 at 6.)

As permitted by the subsequent scheduling order (Doc. 33), Dr. Lajoie filed a Second Amended Complaint on August 2, 2023. (Doc. 34.) The Second Amended Complaint asserts the same facts and the same five claims for relief that she alleged in the First Amended Complaint (Counts 1-5) and adds a claim for estoppel (Count 6). (Doc. 34.) Defendants move to dismiss Counts 3-5 for the same reasons the Court dismissed them previously and move to dismiss Count 6 based on the exclusivity of Title VII and the ADEA, claim preemption by Title 38 of the United States Code, and failure to adequately plead an estoppel claim against the government. (Docs. 35, 36.)

**DISCUSSION**

Lajoie objects to Judge DeSoto's conclusion that Lajoie's Counts 3, 4, 5, and 6 must be dismissed because they are preempted by Title VII and ADEA. (Doc. 56 at 2-6.) Lajoie further objects to Judge DeSoto's determination that Title 38 precludes Lajoie's Count 6. (*Id.* at 5-7.)

## I. Title VII and the ADEA

Title VII of the Civil Rights Act of 1964 "provides the exclusive judicial remedy for claims of [religion] discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 820-821 (1976). Like Title VII, the ADEA provides the exclusive remedy for "age discrimination" claims in federal employment. *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009).

The *Brown* rule does not extend Title VII as an exclusive judicial remedy beyond "claims for discrimination." *Brown* at 821; *see Ahlmeyer* at 1057 ("the ADEA precludes the assertion *of age discrimination* in employment claims, even those seeking to vindicate constitutional rights, under § 1983") (emphasis added). Nolan, a former VA employee, resigned from the VA and claimed constructive discharge. *Nolan v. Cleland*, 686 F.2d 806, 810 (9th Cir. 1982). Nolan brought multiple EEO claims alleging sex discrimination as well as an adverse action appeal. *Id.* Nolan's adverse action appeal argued that the VA had committed a taking of her property interest in employment because VA's deceit, coercion, and duress caused her involuntary resignation. *Id.* at 814-815. The Federal Employees Appeal Authority advised Nolan that federal regulations of the time required her to make an election of remedies. *Id.* at 810. Nolan either could pursue her adverse action appeal, or her consolidated EEO appeal, but not both. *Id.* at 810, 815. Nolan chose to pursue her EEO appeal, and her adverse action appeal was cancelled. *Id.*

Regulations also provided that "the substance of her adverse action claim would be considered in the review of her EEO claims." *Id.* at 815.

Nolan sued the VA, bringing a sex discrimination claim under Title VII, *id.* at 811, and a due process claim relating to the failure of the VA to process her cancelled adverse action claim, *id.* at 811, 814-815. The Ninth Circuit determined that "the *factual predicate* for Nolan's due process claim is the discrimination which is the basis of her Title VII claim" and that the *Brown* rule of Title VII preemption applied to both of Nolan's claims. *Id.* at 815 (emphasis added). The Ninth Circuit reasoned that "[t]he threshold question in Nolan's action is the constructive discharge claim and she would not be able to recover on the due process claim if she were successful on the constructive discharge claim due to the *identical factual basis*, and, therefore, the district court correctly dismissed the due process count and approached the action solely as a Title VII action pursuant to *Brown*." *Id.* (emphasis added).

The Ninth Circuit recognizes that Title VII's preemptive effect does not extend to certain causes of action based on facts giving rise to a discrimination claim but also constituting "highly personal wrongs." *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995). Such "highly personal wrongs" may include rape by a supervisor (*Brock*), forced sexual assaults (*Arnold v. United States,* 816 F.2d 1306 (9th Cir.1987)), and stalking behavior (*Otto v. Heckler*, 781 F.2d 754 (9th

Cir.) *amended by* 802 F.2d 337 (9th Cir.1986)), but do not include "intentional touching and [. . .] sexually suggestive and vulgar remarks" (*Sommatino v. United States*, 255 F.3d 704, 712 (9th Cir. 2001)). Lajoie argues, in essence, that her APA and constitutional claims and her claim for declaratory relief stem from a separate wrong from her Title VII and ADEA claims, namely, the VA's misinterpretation of and misapplication of the law governing the VA's employment requirements. (Doc. 56 at 2-5.) Any such legal misinterpretation and misapplication fails to rise to the level of a "highly personal wrong." *See Sommatino* at 712 ("[the federal defendant's] intentional touching and his sexually suggestive and vulgar remarks are typical of the offensive workplace behavior giving rise to an action to remedy a hostile work environment"). *Brock* and the "highly personal wrongs" cases carve out an exception to *Nolan* to allow non-Title-VII claims that arise from the same facts as a Title VII discrimination claim to be maintained alongside a Title VII claim.

Apart from the "highly personal wrongs" *exception*, the reasoning of *Nolan* further reflects an *exclusion* from the *Brown* rule comprising non-Title-VII claims arising from facts other than discrimination. *See White v. Gen. Servs. Admin.*, 652 F.2d 913, 917 (9th Cir. 1981) ("Title VII does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin"); *Clemente v. United States*, 766 F.2d 1358, 1364 n. 7 (9th Cir.

1985) ("[t]o the extent that plaintiff's *Bivens* claims are founded in actions proscribed by Title VII, they may not be maintained because Title VII provides the exclusive remedy"); *cf. Stilwell v. City of Williams*, 831 F.3d 1234, 1248 (9th Cir. 2016) ("there is no express statement of preclusion in the text of the ADEA that would cause us to conclude that Congress did in fact affirmatively intend to preclude § 1983 First Amendment retaliation suits relating to speech about age discrimination").

*Nolan* states that the *Brown* rule "cannot be circumvented where the factual predicate for [a plaintiff's non-Title-VII] claim is the discrimination which is the basis of [the plaintiff's] Title VII claim." *Nolan* at 815. Whether Title VII precludes Counts 3, 4, 5, or 6 depends on whether Lajoie's complained-of discrimination constitutes a factual predicate of Counts 3, 4, 5, or 6. *See Arnold* at 1311 (citing *Nolan*) ("*[t]o the extent* that Arnold's constitutional claims concern alleged discriminatory behavior [. . .] Title VII provides a comprehensive remedial scheme") (emphasis added). The relevant question may be restated, "Could the claim succeed in the absence of discrimination as defined by Title VII?"

The Ninth Circuit's decision in *Strolberg v. Akal Sec., Inc.*, 210 F. App'x 683 (9th Cir. 2006) provides a helpful interpretation of *Nolan*:

> Appellants' operative complaint below alleged that they had been denied the type of pre- or post-termination processes to which they were entitled, and that the government had "either intentionally or mistakenly" misinterpreted their medical exam results. These facts are

distinct from the allegedly discriminatory termination underlying appellants' Rehabilitation Act claims, and would support a due process claim, independent of appellants' discrimination claims. *Cf. Nolan v. Cleland,* 686 F.2d 806, 814–15 (9th Cir.1982).

Although underdeveloped in Ninth Circuit case law, the same question controls the ADEA exclusivity analysis following the same reasoning as in the Title VII context: "Could the claim succeed in the absence of discrimination as defined by the ADEA?" *See, e.g., Singleton v. Raimondo*, No. CV 23-5286-KK-MAAX, 2024 WL 1136427, at *2 (C.D. Cal. Jan. 26, 2024) ("*[t]o the extent the breach of contract and WARN Act claims are based upon allegations that Defendant discriminated against Plaintiff based upon his age*, the ADEA is the exclusive remedy") (emphasis added).

Magistrate Judge DeSoto determined that Title VII and the ADEA preclude Counts 3, 4, and 5 because those claims "were all based on the same alleged discriminatory conduct" and "seek remedies for allegedly discriminatory conduct." (Doc. 50 at 9-10.) Count 3 seeks declaratory judgment that Lajoie "was qualified to be a VA physician and should not have been separated from her employment." (Doc. 34 at 10.) Count 4 seeks relief under the Administrative Procedure Act relating to agency action, "namely the agency misinterpretation of 38 U.S.C. § 7402(b)(1)[, . . .] adversely affect[ing]" Lajoie. (Doc. 34 at 10-11.) Count 5 alleges that Defendants violated Lajoie's property right to federal employment without due process. (Doc. 34 at 11.) Count 6 alleges that the VA should be estopped from

relying on the reason of Lajoie's failure to complete a residency program based on the VA's alleged misrepresentation to Lajoie that she was qualified to serve as a VA physician without completing a residency program. (Doc. 34 at 11-13.) Each of these claims could succeed in the absence of discrimination within the meaning of Title VII or the ADEA.

Lajoie theoretically could prevail on Counts 3, 4, or 5 based upon the VA's alleged failure to respond to her request for post-termination review (Doc. 34 at 6) or the VA's allegedly contrary-to-law action in its issuance of the July 28, 2022 Final Agency Decision (Doc. 34 at 6) alone without the support of any facts showing that any Defendant "discriminat[ed against Lajoie] *based on race, color, religion, sex, or national origin*" or age. *Brown* at 830 (emphasis added); *c.f. White* at 917 (concluding that constitutional claim based on defendant's alleged retaliation against plaintiff for filing an EEO charge fell within the scope of Title VII as an exclusive remedy, because Title VII makes unlawful retaliation against an employee for filing an EEO charge, so the plaintiff "ha[d] not asserted a separate constitutional claim for which there is no statutory remedy").

Garden variety agency misinterpretation or misapplication of the law could provide a sufficient factual basis for Lajoie to succeed on Counts 3, 4, 5, and 6. Indeed, a close examination of the claims reveals a tension between the Title VII and ADEA discrimination claims and Counts 3, 4, 5, and 6. Was the VA's Final

Agency Decision "discrimination based on race, color, religion, sex, or national origin" or the result of nondiscriminatory caprice in statutory interpretation? Was the failure of the VA to conduct a post-termination review "discrimination based on race, color, religion, sex, or national origin" or simple ineptitude? The Court declines to adopt Magistrate Judge DeSoto's recommendation dismissing in full Plaintiff's Counts 3, 4, 5, and 6 on the basis of Title VII and ADEA preemption. Plaintiff's Counts 3, 4, 5, and 6 are dismissed *to the extent* that they are "founded in actions proscribed by Title VII" or the ADEA. *Clemente* at 1364 n. 7.

## II. Title 38

Title 38 provides "a comprehensive regulatory scheme for employees of the VA." *Weber v. Dep't of Veterans Affs.*, 521 F.3d 1061, 1067 (9th Cir. 2008). Where such a comprehensive regulatory scheme "exists to address agency adverse actions" and "Congress has clearly indicated that no judicial review is available" beyond the scheme, "an individual may not choose other federal statutory avenues to obtain review" of an agency adverse action within the scheme's compass. *Id.*

Title 38 does not bar judicial review of all agency adverse actions. Title 38, for example, explicitly provides for judicial review of "a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary [of Veterans Affairs])[.]" 38 U.S.C. § 7462(f). Title 38 provides that an employee such as Lajoie shall have a right to appeal to a Disciplinary Appeals Board under § 7462 if

the agency brought charges against her "based on conduct or performance" and "[i]f the case involves or includes a question of professional conduct or competence in which a major adverse action was taken." 38 U.S.C. § 7461(a)-(b). Another section of Title 38, on the other hand, provides for a different procedure regarding grievances of employees such as Lajoie that arise from adverse personnel actions that either constitute a "major adverse action" but do not "arise out of a question of professional conduct or competence" or do not constitute a "major adverse action." 38 U.S.C. § 7463. A VA employee may not seek judicial review of the VA's review of a grievance governed by § 7463. *Kransky v. United States Dep't of Veterans Affs.*, No. CV 22-138-BLG-SPW, 2023 WL 5915794, at *2 (D. Mont. Sept. 11, 2023); *see Fligiel v. Samson*, 440 F.3d 747, 752 (6th Cir. 2006) ("there is no provision for judicial review conferred by § 7463, in contrast to § 7462").

Lajoie's Second Amended Complaint fails to specify the exact type of administrative review that Lajoie sought or that the VA undertook. *See* (Doc. 34 at 6.) Lajoie alleges that she requested "a post-termination review of her termination" and that "[n]o response was ever received by Dr. Lajoie to her appeal." (Doc. 34 at 6.) Lajoie further alleges that she "timely filed age and discrimination, and retaliation complaints, concerning her discharge and the adverse employment

13

actions against her" and that the VA "issued a Final Agency Decision," presumably in response to the listed complaints. (*Id.*)

"Discharge" constitutes a "major adverse action" by the VA. 38 U.S.C. § 7461. Lajoie stood entitled to appeal her discharge to a Disciplinary Appeals Board if her discharge resulted from agency charges against her "based on conduct or performance" and the case "involve[d] or include[d] a question of professional conduct or competence." 38 U.S.C. § 7461(a)-(b). Such an appeal may be described in Lajoie's Second Amended Complaint, perhaps unartfully, as the "post-termination review" she "requested." *See* (Doc. 34 at 6.)

The Court dismisses Lajoie's claims to the extent that they challenge VA action under 38 U.S.C. § 7463. *Weber* at 1067; *Kransky* at *2. The Court lacks subject-jurisdiction over such claims. The Court declines in this Order to dismiss any of Lajoie's Counts 3, 4, 5, or 6 outright for failure to state a claim merely because Lajoie neglected to specify that she sought or received agency review under 38 U.S.C. § 7462. The Court would possess subject-matter jurisdiction over certain claims arising from agency action under § 7462, for example. It remains unclear on the face of the Second Amended Complaint whether Lajoie states such claims.

**III. Conclusion**

The Court dismisses Lajoie's Counts 3, 4, 5, and 6 to the extent that each either is "founded in actions proscribed by Title VII" or the ADEA, *Clemente* at 1364 n. 7, or challenges any agency action taken under 38 U.S.C. § 7463 or otherwise foreclosed to judicial review by Title 38 of the U.S. Code. The Court observes that the scope of the above-described dismissals may envelope the entirety of Lajoie's claims in the end. The Court stands prepared to grant judgment in favor of Defendants if further proceedings reveal no genuine issue of material fact able to navigate the Scylla of Title VII and the ADEA on one side and the Charybdis of Title 38 on the other.

Magistrate Judge DeSoto recommended that the Court dismiss Count 6 on two grounds: preemption by Title VII and the ADEA, and the unavailability of judicial review under Title 38. Magistrate Judge DeSoto did not reach the issue of whether Lajoie failed to adequately plead the elements of Count 6. (Doc. 50 at 17); *see* (Doc. 36 at 10-12); *see also* Fed. R. Civ. P. 12(b)(6). The Court declines to address the unreached issue, and any other unreached arguments, in this Order. The Court continues to refer such questions for findings and recommendations from Magistrate Judge DeSoto in the first instance.

## ORDER

Accordingly, **IT IS ORDERED** that Magistrate Judge DeSoto's Findings and Recommendation (Doc. 50) is **ADOPTED IN PART AND DENIED IN**

**PART**. Defendants' Rule 12(b) Motion to Dismiss Counts 3-6 of the Second

Amended Complaint (Doc. 35) is **GRANTED IN PART AND DENIED IN**

**PART**.

      **DATED** this 30th day of May, 2024.

_____

Brian Morris, Chief District Judge
United States District Court